IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RED CLOVER, LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>ARC NETWORK LLC,<br><br>    *Defendant*. | Civil Action No. 1:26-cv-1551<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Red Clover, LLC ("Red Clover" or "Plaintiff"), by and through its undersigned counsel, alleges on personal knowledge as to its own acts and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is an action for false designation of origin and unfair competition under the Lanham Act, including false designation of origin and unfair competition under Section 43(a), 15 U.S.C. § 1125(a), as well as for trademark infringement and unfair competition under New York common law arising from Defendant's unauthorized adoption and use of a logo that is confusingly similar to Red Clover's distinctive design mark (the "Red Clover Design Mark") in connection with overlapping business-to-business channels, events, and content directed to the same classes of professional decisionmakers. Defendant's conduct is likely to cause, and in fact causes, consumer confusion, mistake, or deception as to source, sponsorship, affiliation, or approval, and has been undertaken with knowledge of Red Clover's prior rights and in bad faith.

2. Red Clover seeks injunctive relief, recovery of damages and Defendant's profits, enhanced and treble damages and attorneys' fees as permitted by 15 U.S.C. § 1117 for willful

violations, punitive damages for willful unfair competition, costs, and such other and further relief as the Court deems just and proper to protect Red Clover's goodwill and prevent further injury to the public.

## PARTIES

3. Plaintiff Red Clover, LLC is a New Jersey limited liability company with a principal place of business at 1719 State Route 10, Suite 222, Parsippany, New Jersey 07054 that, since at least August 2, 2017, has continuously used its Red Clover Design Mark in commerce in connection with professional consulting services, including human resources ("HR"), organizational design and development, organizational change management and restructuring, leadership development, performance management, HR project management, and training. Red Clover serves clients nationwide, including in New York, and regularly participates in and sponsors business-to-business events and conferences.

4. Defendant Arc Network, LLC ("Arc Media") is, on information and belief, a Delaware limited liability company with a principal place of business at 1185 6th Avenue, New York, New York 10036 that operates events and digital media properties, including under HR-formative brands such as HR Executive and HR Tech. Arc Media transacts business in New York, conducts and promotes events directed to New York-based professionals and enterprises, and advertises and promotes the Arc Media Design Mark to New York consumers through online and offline channels.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over Red Clover's federal claims under the Lanham Act, 15 U.S.C. § 1125(a). The Court has supplemental jurisdiction over the related New

York common law claims under 28 U.S.C. § 1367(a), as they form part of the same case or controversy.

6. In addition, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff Red Clover, LLC is a citizen of New Jersey and, upon information and belief, no member of Defendant Arc Network LLC is a citizen of New Jersey; Defendant is a citizen of New York; and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. This Court has personal jurisdiction over Arc Media because it resides in this District and/or transacts business in New York, has committed acts in and directed to New York and this District, and caused injury to Red Clover in New York arising from the accused branding.

8. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(1)–(2) because at least one defendant resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

*Red Clover's Marks, Use, and Goodwill*

9. Red Clover owns U.S. Trademark Registration No. 5,325,699 for the RED CLOVER word mark ("RED CLOVER Registration") for business consulting services in the fields of human resources, business process transformation, organizational change management, organizational design and development, leadership, performance management, project management, training, and outplacement, with first use in commerce at least as early as August 2, 2017.

10. Red Clover also owns pending U.S. Application Serial No. 99107178 for its Red Clover Design Mark ("Red Clover Application", together with RED CLOVER Registration, collectively "RED CLOVER Marks" or "RED CLOVER Mark"), as depicted here:

3



11.  The Red Clover Application has been approved for publication by the United States Patent and Trademark Office (USPTO) and is currently in the opposition extension period, following Defendant's request for an extension of time to oppose. The request to extend time to oppose was granted until March 29, 2026.

12. The Red Clover Design Mark is a four-element geometric design arranged in a stylized clover-leaf formation comprising three speech-bubble shapes and a solid circular element rendered in gray and red tones. The distinctive arrangement and overall commercial impression of this four-shape configuration serve as a source identifier for Red Clover's services.

13. Red Clover first used the RED CLOVER Marks in U.S. interstate commerce on August 2, 2017. Since that date, Red Clover has used these marks without interruption on its principal websites and digital properties, on sales and marketing collateral, and on event materials promoting Red Clover's consulting services.

14. Red Clover has, since at least August 2017, promoted the services offered under its Red Clover Design Mark through multiple channels, including at least its company websites (redcloverhr.com and redcloverjobs.com), social media platforms (including LinkedIn, Facebook, and Instagram), targeted email campaigns to HR executives, business owners, and other decisionmakers, trade shows and industry events (including NERCA 2021, NADA 2022, and NADA 2023, EANJ 2025), and earned-media placements in national publications (including a Forbes feature article).

- Plaintiff's website at <redcloverhr.com>



- Plaintiff's website at <redcloverjobs.com>



- Plaintiff's LinkedIn



- Plaintiff's Facebook



- Plaintiff's Instagram



15. Red Clover provides services and markets under the RED CLOVER Marks throughout the United States, including at least New York, New Jersey, Illinois, North Carolina, California, Maryland, Wyoming, Pennsylvania, Massachusetts, Tennessee, Florida, Rhode Island, Delaware, Michigan, Hawaii, Ohio, and Texas. Revenues for services rendered under the Red Clover Mark have grown from under $250,000 in 2017 to over $1.6 million for fiscal year 2025, reflecting substantial market penetration and recognition for a small business.

16. As a result of sustained and continuous use, promotion, and sales, the RED CLOVER Marks have come to identify Red Clover as the sole source of the services offered under the mark and embody substantial goodwill.

17. The RED CLOVER Marks have at all times served as a distinct and unique source identifier for Plaintiff, as reflected by the federal RED CLOVER Registration and the pending RED CLOVER Application.

*Defendant's Adoption and Use of a Confusingly Similar Logo*

18. Arc Media positions itself as a global provider of events and digital content in the business networking industry, including HR-branded and HR-focused conferences and media. These offerings operate in overlapping channels with Red Clover's sponsorships, attendance, and consulting engagements at professional events focused on HR, leadership, organizational change, and workforce development.

19. On information and belief, in or about October 2024, Arc Media adopted and began using a new logo (the "Arc Media Design Mark") comprising a four-shape configuration that mimics the Red Clover Design Mark's distinctive speech-bubble plus circle arrangement and overall commercial impression. Arc Media uses the Arc Media Design Mark across its HR-formative brands, including HR Executive and related verticals.

20. Although Arc Media has long used HR-formative word marks in connection with its events and publications, its adoption of the Arc Media Design Mark is of recent vintage and post-dates Red Clover's continuous use of the Red Clover Design Mark by more than seven years.

21. Arc Media commonly displays the Arc Media Design Mark in red and black tones. On information and belief, Arc Media's consistent, cohesive logo-based use of red and black emerged with its 2024 rebrand introducing the Arc Media Design Mark.

22. Arc Media's events, publications, and promotional activities target the same classes of buyers and professional decision-makers as Red Clover, and are marketed through converging channels, including industry conferences and digital media directed to HR leaders, executives, and enterprise buyers.

- Defendant's App store



- Defendant's LinkedIn



- Defendant's Facebook



23. Shortly after Arc Media's adoption of the Arc Media Design Mark, Red Clover began receiving internal feedback and expressions of concern regarding likelihood of confusion in the marketplace.

24. On March 25, 2025, Red Clover notified Arc Media in writing of its prior rights and the likelihood of confusion caused by Arc Media's use of the Arc Media Design Mark. Red Clover furnished additional detail on June 24, 2025, including use timeline, channels of trade, scope of use, and evidence supporting Red Clover's common law priority.

25. On information and belief, Arc Media continued using the Arc Media Design Mark after receiving Red Clover's notice and requests to cease, including in connection with New York-directed promotions and events.

*Likelihood of Confusion and Bad Faith*

26. Defendant's Arc Media Design Mark is confusingly similar to the Red Clover Design Mark in overall appearance, commercial impression, and conceptual connotation, including the distinctive arrangement of coordinated bubble shapes with a fourth element evoking a stylized clover and dialogue motif.

*Side by side comparison*

| *RED CLOVER DESIGN MARK* | *ARC MEDIA DESIGN MARK* |
|---|---|
|  |  |

27. Both Plaintiff's and Defendant's logos feature a composition of four rounded, teardrop-shape evoking elements arranged in a two-by-two grid. This design creates a cohesive and symmetrical visual impression suggestive of communication, connection, or location-based services - core themes associated with Plaintiff's brand identity.

28. While Plaintiff's logo embodies slight variations in color and tone, including the use of a muted gray element, the overall layout, shape, and stylized format remain substantially similar. Defendant's mark employs a more unified color palette and organic silhouette, whereas Defendant's version maintains the same fundamental configuration with only minor color differentiation.

29. The similarities between the two logos are such that ordinary consumers encountering Defendant's mark are likely to believe it is associated with, endorsed by, or derived from Plaintiff's brand. The visual resemblance is particularly concerning given the overlapping commercial context and consumer-facing use of the marks.

30. Defendant's accused use occurs in overlapping trade channels and targets the same or highly similar audiences, including HR leaders, enterprise executives, and business-to-business decisionmakers attending or consuming professional events and content - precisely the venues in which Plaintiff sponsors, consults, does business, and markets.

31. The parties' respective offerings are proximate, as Defendant's HR-branded events, content, and sponsorship opportunities intersect with Plaintiff's event sponsorships, consulting engagements, and business development activities, creating a substantial likelihood that consumers will mistakenly believe that Defendant's offerings are affiliated with, sponsored by, or otherwise connected to Red Clover.

32. Plaintiff and Defendant target the same or closely related decision-makers and influencers within the human resources and human capital management ecosystem, including HR executives and other enterprise decision-makers, and they promote their offerings through converging channels - most notably HR-focused conferences and trade media - such that relevant consumers encounter the parties' marks in the same environments and at the same moments of commercial attention. This overlap increases the likelihood that consumers will mistakenly believe Defendant's mark is connected to, sponsored by, or affiliated with Plaintiff. The risk of confusion is heightened by common market practices in the technology sector in which a single enterprise operates both an events business unit and a consulting or software/services business unit under a common brand, conditioning HR and HR-tech audiences to view co-branded event

and services offerings as components of one integrated brand. In this industry context, Defendant's use of a highly similar logo in connection with high-profile HR industry events reasonably leads consumers to believe that Defendant's events are affiliated with, sponsored by, or operated in the same corporate family as Plaintiff's consulting and advisory services.

33. On information and belief, consumers, vendors, and industry participants are likely to be confused, and instances of confusion have arisen and/or will arise, as evidenced by internal marketplace feedback contemporaneous with the 2024 adoption by Defendant and Red Clover's proactive efforts to mitigate confusion.

34. Defendant had, at a minimum, constructive knowledge of Red Clover's prior rights and acquired actual knowledge no later than March 25, 2025. Defendant's continued use thereafter constitutes willful conduct and bad faith, has caused and, unless enjoined, will continue to cause immediate and irreparable injury to Plaintiff's reputation and goodwill for which there is no adequate remedy at law.

## FIRST CAUSE OF ACTION

(False Designation of Origin and Unfair Competition - Lanham Act § 43(a), 15 U.S.C. § 1125(a))

35. Red Clover realleges and incorporates by reference the foregoing paragraphs.

36. Red Clover owns valid and protectable rights in the unregistered Red Clover Design Mark by virtue of its continuous, substantially exclusive use of the mark in U.S. commerce since at least August 2, 2017, and the mark's function as a source identifier for Red Clover's services.

37. Defendant's unauthorized use in commerce of the Arc Media Design Mark, which is confusingly similar to the Red Clover Design Mark, in overlapping channels and before overlapping audiences, is likely to cause confusion, mistake, or deception as to the affiliation,

connection, or association of Defendant with Red Clover, and/or as to the origin, sponsorship, or approval of Defendant's goods and services, in violation of 15 U.S.C. § 1125(a).

38. Defendant's conduct constitutes false designation of origin and unfair competition under Section 43(a) of the Lanham Act.

39. Defendant's violation is willful. Defendant had knowledge of Red Clover's prior rights yet continued its infringing use, entitling Red Clover to damages, Defendant's profits, and enhanced and treble damages, as well as costs and reasonable attorneys' fees in exceptional cases, under 15 U.S.C. § 1117.

40. Red Clover has suffered and will continue to suffer irreparable harm as a result of Defendant's violations and lacks an adequate remedy at law. Red Clover is entitled to injunctive relief under 15 U.S.C. § 1116 restraining Defendant's continued unlawful conduct.

### SECOND CAUSE OF ACTION

(Common Law Trademark Infringement - New York)

41. Red Clover realleges and incorporates by reference the foregoing paragraphs.

42. Red Clover owns valid and protectable common law rights in the Red Clover Design Mark. Defendant's unauthorized use in commerce of the Arc Media Design Mark that is confusingly similar to the Red Clover Design Mark is likely to cause confusion, mistake, or deception as to source, sponsorship, affiliation, or approval and therefore constitutes trademark infringement under New York common law.

43. Defendant's infringement is willful and in bad faith, including by continuing to use the Arc Media Design Mark after notice of Red Clover's prior rights and likely confusion.

44. Red Clover has suffered and will continue to suffer damages and irreparable harm as a result of Defendant's common law trademark infringement.

45. Red Clover is entitled to injunctive relief, damages, Defendant's profits, punitive damages, and costs under New York common law.

## PRAYER FOR RELIEF

WHEREFORE, Red Clover respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

1. Preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, affiliates, licensees, successors, and all persons in active concert or participation with any of them who receive notice of the injunction, from:

    a. using the Arc Media Design Mark, or any other logo, design, mark, symbol, or device confusingly similar to the Red Clover Mark, in connection with any goods or services, pursuant to 15 U.S.C. § 1116;

    b. representing, directly or indirectly, that Defendant, its goods or services, are affiliated, connected, or associated with, or sponsored, approved, or authorized by Red Clover;

    c. assisting or inducing any other person to engage in any of the foregoing acts;

2. Ordering Defendant to deliver up for destruction or permanent removal from commerce all marketing, packaging, signage, digital assets, advertisements, and promotional materials bearing the Arc Media Design Mark or any confusingly similar mark;

3. Ordering Defendant to provide written notice of the injunction to its marketing personnel, contractors, licensees, and agents, together with revised brand guidelines implementing the injunction;

4. Ordering an accounting and disgorgement of Defendant's profits attributable to their unlawful conduct and awarding Red Clover compensatory damages in an amount to be determined at trial, together with enhanced or treble damages and attorneys' fees as permitted by 15 U.S.C. § 1117;

5. Awarding punitive damages on Red Clover's unfair competition claim due to Defendant's willful and bad-faith conduct;

6. Awarding Red Clover its costs, pre- and post-judgment interest, and such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York

February 24, 2026

Respectfully submitted,

/William R. Samuels/
William R. Samuels
Cole-Frieman & Mallon LLP
201 California Street, Suite 350
San Francisco, CA 94111
Telephone: 646-453-5436
bsamuels@colefrieman.com
Attorney for Plaintiff Red Clover, LLC